UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BIOMET, INC., BIOMET ORTHOPEDICS, INC., BIOMET BIOLOGICS, INC., f/k/a CELL FACTOR TECHNOLOGIES, INC., and BIOMET SPORTS MEDICINE, INC., f/k/a ARTHROTEK, INC.,<br><br>    Plaintiffs<br><br>  vs.<br><br>RANDY D. FIELDS, FIELDS MEDICAL CORPORATION, and FIELDS & STALLINGS, L.L.C.,<br><br>    Defendants | CAUSE NO. 3:07-CV-346 RM |

## OPINION AND ORDER

Plaintiffs Biomet, Inc. and related entities, brought suit against Randy Fields, his wholly-owned company Fields Medical Corporation ("FMC"), and co-owned Fields & Stallings, L.L.C. ("F&S"), alleging that Mr. Fields engaged in competitive activities resulting in the breach of multiple distributorship contracts between the Biomet plaintiffs and the defendants. Two of these contracts include mandatory arbitration clauses. This cause is before the court on the defendants' motion to compel arbitration of certain of Biomet's claims and to stay proceedings on the remaining claims pending the outcome of arbitration. For the reasons set forth below, the court grants the defendants' motion to compel arbitration of Biomet's claims arising from the Cell Factor and Arthortek contracts and stays the remaining claims pending arbitration.

I. FACTUAL BACKGROUND

Biomet, Inc. and its corporate affiliates, Biomet Orthopedics, Cell Factor, and Arthortek, are Indiana corporations which design, manufacture, and sell orthopedic, sports medicine, and trauma-related products. Randy Fields, individually and through his companies FMC and F&S, acted as a distributor of Biomet products. Beginning in August 1994, Biomet contracted with FMC and Mr. Fields for the use of its sales associates as the exclusive Biomet distributor for a territory that includes portions of Kentucky, Tennessee, and West Virginia. Mr. Fields then created F&S with co-owner Mr. Stallings to act as the distributor of medical devices to hospitals and physicians. Specifically, F&S signed separate distributorship contracts with both Cell Factor and Arthortek.

Biomet alleges that in each of the parties' distributorship contracts, Mr. Fields and his companies agreed not to engage in any business or employment involving the sale, marketing, or promotion of products that compete with the products of Biomet and its affiliates. Biomet further alleges that Mr. Fields agreed not to interfere with the relationship between any of the Biomet companies and their employees. Of the three agreements, both the Cell Factor and Arthrotek contracts include mandatory arbitration provisions, requiring all claims arising out of or related to those contracts to be resolved by arbitration. The distribution agreement between Fields and Biomet does not contain an arbitration clause.

Biomet informed its distributors in November 2006 that it was pursuing a transaction with a private equity group with the goal of converting to a privately-

2

owned corporation. The defendants maintain that Biomet's distributors were told that they would be expected to execute new distributorship agreements. Finding this new proposal objectionable, Mr. Fields and Mr. Stallings began to explore the possibility of selling their business to Zimmer U.S., one of Biomet's competitors. In June 2007, Mr. Fields and Mr. Stallings entered into a unanimous written consent resolving to enter into an asset purchase agreement with Zimmer and executed employment agreements with a Zimmer distributor. Mr. Fields notified Biomet that he was terminating their relationship.

Biomet filed suit against the defendants in Kosciusko County Superior Court on July 5, seeking to enforce certain contractual obligations allegedly owed by Mr. Fields under the terms of the parties' agreements. On July 16, Biomet obtained an *ex parte* temporary restraining order from the Indiana state court, and on July 25, the defendants removed the action to this court and filed a motion to dissolve the temporary restraining order. The court vacated oral argument when the defendants notified the court that the parties had agreed to allow the temporary restraining order to expire by its own terms. Biomet then moved to continue the hearing on their motion for preliminary injunction until October 31. On October 9, the defendants moved to compel arbitration of the plaintiff's claims arising out of the Cell Factor and Arthrotek contracts, and on October 18, Biomet asked the court to remove the preliminary injunction hearing from its docket. In its motion to cancel the hearing, Biomet specifically reserved the right to seek temporary, preliminary, or permanent injunctive relief in the future.

3

II. DISCUSSION

Under the Federal Arbitration Act, a written provision in a contract "to settle a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act also provides for a stay of proceedings when an issue in the arbitration proceedings is referable to arbitration, 9 U.S.C. § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. "Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties." AT&T Techs., Inc. v. Comm'n Workers of Am., 475 U.S. 643, 649 (1986).

When deciding arbitrability disputes, "a court must bear in mind the liberal federal policy in favor of arbitration agreements." Int'l Bhd. of Elec. Workers, Local 21 v. Illinois Bell Tele. Co., 491 F.3d 685, 687-688 (7th Cir. 2007). This means that "[w]here a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Id. (citing AT&T Techs. v. Comm'n Workers of Am., 475 U.S. at 650). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002);

4

*see also* Am. Arbitration Ass'n v. N. Miami Cmty. Schs., 866 N.E.2d 296, 301 (Ind. Ct. App. 2007) ("[P]arties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication.").

*A. Compelling Arbitration*

A court may compel arbitration where there is: (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 690 (7th Cir. 2005) (noting that the court's duty is to determine whether the parties' grievance belongs in arbitration, not rule on the potential merits of the underlying dispute between the parties); *see also* Norwood Promotional Prods., Inc. v. Roller, 867 N.E.2d 619, 623 (Ind. Ct. App. 2007) (holding that a court may compel arbitration if there is "an enforceable agreement to arbitrate the dispute" and "the dispute is the type of claim that the parties agreed to arbitrate."). Once the court determines that the parties contracted to submit their claims to arbitration and the asserted claims are within the scope of the parties' agreement, the court is required to compel arbitration. Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004); Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 909 (7th Cir. 1999) ("[A] court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is

5

not susceptible of an interpretation that covers the asserted dispute.") (internal citation omitted).

The defendants argue that Biomet agreed to submit its claims arising out of the Cell Factor and Arthortek contracts to arbitration and that Biomet's claims related to these contracts are within the scope of the parties' agreements, so that these claims should be compelled to arbitration. Biomet maintains that the defendants' motion is not ripe for consideration. While Cell Factor and Arthrotek acknowledge that the merits of their contract claims against F&S must be resolved in arbitration, Biomet argues that it is pursuing these claims solely for the purpose of obtaining injunctive relief. Further, Biomet notifies the court that it is no longer seeking preliminary injunctive relief and that it intends to submit an amended complaint to reflect this circumstance.

To date, Biomet has yet to clarify "which plaintiff asserts which claims against which defendant" as assured. To the contrary, Biomet's complaint asserts claims against F&S and FMC in relation to the Cell Factor and Arthrotek contracts and does not specify that these claims are only for injunctive relief. The complaint seeks all relief that "may be sought at trial," including "compensatory and punitive damages," on each of Biomet's claims. Because Biomet continues to submit all of its claims for trial on the merits, the defendants' motion to compel is ripe, and the court must decide whether Biomet's claims are subject to mandatory arbitration.[1]

---

[1] Although the court is empowered to compel Biomet's claims to arbitration, Biomet ultimately may choose whether to arbitrate those claims or abandon them. *See* Sims v.

6

To determine whether Biomet's claims are within the scope of the parties' agreement to arbitrate, the court must look to the specific wording of the arbitration provisions themselves. *See* Goldberg v. Focus Affiliates, Inc., 152 F. Supp. 2d 978, 980-982 (N.D. Ill. 2001) (holding that fraudulent inducement claims constituted disputes "under the terms" of the parties' agreement). The phrase "arising out of" or "related to" a contract "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *See* Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 643 (7th Cir. 1993) (noting that both contract and tort claims falling within the scope of a valid arbitration provision are subject to mandatory arbitration); *see also* Welborn Clinic v. MedQuist, Inc., 301 F.3d 634, 639 (7th Cir. 2002) (characterizing an arbitration clause covering all claims either "arising out of" or "relating to" the parties' agreement as "a very broad, standard arbitration clause."). Broad arbitration clauses employing this type of language "necessarily create a presumption of arbitrability." Kiefer Specialty Flooring v. Tarkett, 174 F.3d at 909 (holding that tortious interference claims arose from the parties' contractual relationship and thus were subject to the arbitration provision in the distributorship agreement).

The Cell Factor and Arthrotek contracts both employ broad and unambiguous language stating that arbitration shall be used to settle any

---

Montell Chrysler, Inc., 317 F. Supp. 2d 838, 841 (N.D. Ill. 2004) (citing LaPrade v. Kidder Peabody & Co., Inc., 146 F.3d 899, 903 (D.C. Cir. 1998)).

7

disputes relating to the respective contracts.[2] All of Biomet's claims arising out of the Cell Factor and Arthortek contracts are within the scope of the parties' agreements to arbitrate, including Counts III and IV for breach of the respective contracts, Count V for unjust enrichment based on the respective contracts, Count VII for misappropriating trade secrets acquired during the course of the parties' contractual relationships, Count VIII for unfair competition based on the confidential relationships established by the respective contracts, and Count IX for breach of the fiduciary duties arising from the respective contracts. Moreover, Biomet does not dispute that the arbitration provisions are valid or that its claims relating to the Cell Factor and Arthrotek contracts are subject to mandatory arbitration.

Biomet's claims against F&S and FMC in Counts III, IV, V, VII, VIII and IX are significantly related to the arbitration provisions contained in the parties' distributorship agreements. Accordingly, the court grants the defendants' motion to compel arbitration of Biomet's claims relating to the Cell Factor and Arthrotek contracts.

### B. Stay of Proceedings

While the Federal Arbitration Act requires a stay for arbitrable issues, a district court also has the discretion to stay nonarbitrable issues while arbitration

---

[2] The contract between Cell Factor and F&S contains an arbitration provision that covers any dispute "arising out of, or relating to [that] Agreement or to a breach hereto or default hereunder . . . ." Similarly, the provision in the Arthrotek contract covers any dispute "arising from or in any way connected with [that] Agreement, the breach, termination or invalidity thereof . . . ."

8

proceedings are pending.[3] 9 U.S.C. § 3; *see also* Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983) ("In some cases, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of discretion to control its docket."); *see also* Volkswagen of Am., Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 972 (7th Cir. 2007) ("In many instances, moreover, district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court."). A district court may abuse its discretion in allowing nonarbitrable issues to proceed absent a stay, however, where "the pending arbitration is 'likely to resolve issues material to the lawsuit.'" Id. (citing AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 783 (8th Cir. 2001)). In determining whether to stay an entire action pending arbitration, the court must consider the risk of inconsistent rulings, the extent to the arbitrators' decision will bind parties, and the prejudice that may result from delays. Id.

The defendants contend that Biomet's claims against Mr. Fields are so interconnected with the claims under the Cell Factor and Arthortek contracts that allowing the nonarbitrable claims to proceed at the same time as arbitration risks inconsistent rulings. Biomet disagrees, arguing that Cell Factor and Arthortek are

---

[3] Contrary to Biomet's argument in its opposition to the defendants' motion to compel, the Federal Arbitration Act does not require the commencement of arbitration proceedings prior to the issuance of a stay. *See* Sims v. Montell Chrysler, 317 F. Supp. 2d at 841.

separate corporate entities with separate contracts and claims distinct from the claims of the other Biomet plaintiffs. In its complaint, however, Biomet relies on the same alleged conduct by Mr. Fields as the basis for all of its claims. Contrary to Biomet's argument, the conduct attributable to Mr. Fields and FMC is the same conduct allegedly undertaken by F&S. Thus, if Mr. Fields' conduct breached the non-compete, best efforts, and no-hire provisions of the Cell Factor and Arthortek contracts, it likely also breached the equivalent provisions in Fields' separate contract with Biomet. *See e.g.,* Baggesen v. Am. Skandia Life Assurance Corp., 235 F. Supp. 2d 30, 33 (D. Mass. 2002) (staying suit against insurer pending arbitration against securities dealer where the plaintiff's allegations against both defendants involved the actions of a mutual agent, rendering the factual and legal underpinnings of the claims against the insurer substantially similar to those against the dealer). As such, a refusal to stay the entire action risks inconsistent rulings.

Moreover, Biomet seeks relief jointly from each of the defendants such that the court cannot order relief until F&S's rights have been adjudicated. For example, Biomet asks the court to nullify or otherwise rescind the asset purchase agreement entered into jointly by all of the defendants with Zimmer, but this action cannot be taken until F&S's rights have been adjudicated in arbitration. Similarly, Biomet requests monetary relief that would require the court to disgorge compensation paid jointly to all of the defendants. Accordingly, the nonarbitrable issues in this case are so intertwined with Biomet's claims under the Cell Factor

10

and Arthrotek contracts that granting relief necessarily depends on the outcome of arbitration.

No prejudice will result from staying the entire action pending arbitration. Biomet won't be deprived of its day in court. Instead, the extent of the defendants' liability under the Cell Factor and Arthrotek contracts may shed light on the issues remaining in federal court. *See* Volkswagen v. Sud's of Peoria, 474 F.3d at 972. Biomet's reference to a similar case pending in Michigan state court is distinguishable, as a stay of proceedings in that case would have conflicted with an outstanding motion for injunctive relief. Here, Biomet withdrew its preliminary injunction motion and provides no reason to suggest that it would suffer hardship by a stay of its nonarbitrable claims. Therefore, Biomet's remaining claims will be stayed pending the arbitration of Biomet's claims under the Cell Factor and Arthrotek contracts.

### III.  CONCLUSION

For the foregoing reasons, the court GRANTS the defendants' motion to compel arbitration and stay proceedings [Doc. No. 41] as follows:

> (a) the motion to compel arbitration is GRANTED with respect to Biomet's claims related to F&S and FMC under the Cell Factor and Arthrotek contracts, and
> 
> (b) the motion to stay is GRANTED with respect to Biomet's remaining claims.

11

Based on the stay of a portion of Biomet's claims, the clerk of the court is DIRECTED to mark this action closed for statistical purposes. The court shall retain jurisdiction, and this case shall be restored to the trial docket upon motion of any party if circumstances change so that it may proceed to final disposition.

SO ORDERED.

Entered:  November 28, 2007

        /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court