UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BIOMET, INC. and )
BIOMET ORTHOPEDICS, INC., )
)
Plaintiffs )
)
vs. )          CAUSE NO. 3:07-CV-346RM
)
RANDY D. FIELDS, )
)
Defendant )

OPINION AND ORDER

This is an action by Biomet, Inc. to enforce contractual obligations, which

the defendants removed from Kosciusko Superior Court. Jurisdiction is pursuant

to 28 U.S.C. § 1332.[1] The cause came before the court on November 24, 2008 for

hearing on (1) Biomet's motion for summary judgment on Count VI of the second

amended complaint; (2) Biomet's amended motion for leave to file a third amended

complaint; (3) Mr. Fields' motion to strike the declaration of Robert Vitoux

submitted by Biomet in support of its motion for summary judgment; (4) Biomet's

motion for a rule to show cause; and (5) Biomet's motion for Rule 11 sanctions.

---

[1] Plaintiffs Biomet and Biomet Orthopedics are Indiana corporations with their
principal places of business in Indiana. Defendant Fields is a citizen of Kentucky. Former
defendant FMC is a Kentucky corporation and has its principal place of business in
Kentucky. Former defendant F&C is a limited liability company with its principal place
of business in Kentucky, and its two members are citizens of Kentucky.

Biomet and its corporate affiliates, Biomet Orthopedics, Arthrotek, and Cell Factor, design, manufacture, and sell orthopedic, sports medicine, and trauma related products. Randy Fields, individually and through his companies FMC and F&S, acted as a distributor of a variety of Biomet products. Beginning in August 1994, Biomet contracted with FMC and Mr. Fields for the use of its sales associates as the exclusive distributor for a territory that includes portions of Kentucky, Tennessee, and West Virginia. Mr. Fields created F&S with co-owner Kirk Stallings to act as the distributor of medical devices to hospitals and physicians. F&S signed separate distributorship contracts with both Cell Factor and Arthortek.

Biomet alleges that in each of the parties' distributorship contracts, Mr. Fields and his companies agreed to engage in no business or employment involving the sale, marketing, or promotion of products that compete with the products of Biomet and its affiliates. Biomet further alleges that Mr. Fields agreed not to interfere with the relationship between any of the Biomet companies and their employees. The Cell Factor and Arthrotek contracts include mandatory arbitration provisions requiring all claims arising out of or related to those contracts to be resolved by arbitration. The distribution agreement between Fields and Biomet doesn't contain an arbitration clause.

In November 2006, Biomet informed its distributors that it was pursuing a transaction with a private equity group with the goal of converting to a privately-

owned corporation, and the distributors would be expected to execute new distributorship agreements. Finding this new proposal objectionable, Mr. Fields and Mr. Stallings began exploring the possibility of selling their business to Zimmer, a Biomet competitor. In June 2007, Mr. Fields and Mr. Stallings entered into a unanimous written consent resolving to enter into an asset purchase agreement with Zimmer and executed employment agreements with a Zimmer distributor. Mr. Fields notified Biomet that he was terminating their relationship. Biomet urged Mr. Fields and Mr. Stallings to repudiate the Zimmer deal. As a result, Mr. Stallings formed his own corporation for the purpose of working with Biomet and began competing directly with FMC, F&S, and Zimmer. Mr. Stallings and Biomet began to try to get FMC and F&S sales associates to repudiate their contracts with Zimmer.

To stop these actions, Mr. Fields brought suit in Kentucky state court and moved for a restraining order against Mr. Stallings. The Kentucky court issued an order enforcing the terms of Mr. Stallings' non-compete clause and enjoining him from competing against Mr. Fields' companies. Biomet filed this suit against the defendants in Kosciusko County Superior Court, seeking to enforce certain contractual obligations allegedly owed under the terms of the parties' agreements. On July 16, 2007, Biomet obtained an *ex parte* TRO from the Indiana state court, and the defendants removed the action to this court and filed a motion to dissolve the TRO. The court vacated oral argument when the defendants notified the court that the parties had agreed to allow the TRO to expire by its own terms.

In October 2007, the defendants moved to compel arbitration of the claims arising out of the Cell Factor and Arthrotek contracts, and Biomet acknowledged that these claims were subject to arbitration but argued that the motion wasn't ripe because it was pursuing these claims solely to obtain injunctive relief. Biomet notified the court that it no longer sought preliminary injunctive relief and would submit an amended complaint to reflect this circumstance. A month later, when Biomet had yet to amend its complaint, the court granted the defendants' motion to compel and stay proceedings.

Biomet moved the court to lift the stay and for leave to file a second amended complaint, removing Cell Factor and Arthrotek as plaintiffs and FMC and F&S as defendants, thus removing all arbitrable claims. The court granted the motion but cautioned Biomet against tactical maneuvering. The second amended complaint added a breach of contract claim, Count VI, against Mr. Fields, alleging an oral agreement under which Mr. Fields would order and pay for surgical instruments from Biomet.

In May 2008, Biomet moved for partial summary judgment on Count VI, arguing that Mr. Fields owes Biomet more than $1 million for instruments that he ordered from Biomet but didn't pay for. Mr. Fields doesn't dispute that an oral contract existed but claims that his companies, not he, purchased the instruments, and the motion should be denied because FMC and F&S are no longer parties to the action. Mr. Fields also argues that a genuine issue exists as to the amounts in dispute and that Biomet lacks standing to recover amounts

allegedly owed to Arthrotek and Cell Factor. Mr. Fields also moved to strike Biomet employee Robert Vitoux's declaration in support of summary judgment.

After Mr. Fields responded to the summary judgment motion, Biomet moved for leave to file a third amended complaint, seeking to bring FMC and F&S back into the litigation, as well as to add two additional counts. Before Mr. Fields responded, Biomet filed an "amended" motion to amend, which differed from the first motion only with the addition of another count. Biomet seeks to add Count VII, a breach of contract claim against FMC and F&S, in the alternative to Count VI, if the evidence shows that it was Mr. Fields' companies, rather than Mr. Fields himself, who contracted to purchase instruments from Biomet. Biomet also seeks to add a fraudulent transfer claim against FMC and F&S as Count VIII and a breach of contract claim by Arthrotek against F&S as Count IX. Mr. Fields doesn't oppose the addition of Count VII, but argues that the court should deny the addition of Counts VIII and IX.

Before the motion to amend became ripe, Biomet moved for a rule to show cause arguing that Mr. Fields, FMC, and F&S violated the court's November 2007 arbitration order by filing a second complaint against Biomet and its affiliates in Kentucky state court. Biomet contends that these claims arise from the same set of facts as this one and must be arbitrated. Biomet asks the court to order Mr. Fields, FMC, and F&S to show cause why they shouldn't be held in contempt. Biomet says it removed the Kentucky litigation to federal court and has moved to

transfer it to this district, where it intends to seek consolidation with this case.[2] On October 3, Biomet also moved for Rule 11 sanctions against Mr. Fields and his law firm, arguing that Mr. Fields' claims in the Kentucky litigation should have been filed as compulsory counterclaims in this action.

## II.

### A.

Biomet seeks summary judgment on Count VI. Biomet claims that in his role as a distributor, Mr. Fields orally contracted to purchase a variety of surgical tools from Biomet, designed to be used by customer-surgeons to implant Biomet orthopedic products. Biomet says that when Mr. Fields became a distributor, he agreed in his written contract to abide by "Biomet distributor policies and procedures," which include the "Distributor Policy Manual." The policy manual described the process by which distributors could purchase instruments: purchases would be accumulated on a "Sample Account,"and Biomet would deduct payments for those purchases from the distributor's commission payments.

Biomet claims Mr. Fields orally agreed to purchase instruments on his sample account and agreed to pay for those instruments by having the monies deducted from his bi-monthly commission payments. To the extent that no express

---

[2] The docket sheet in the Kentucky litigation, 3:08cv323, shows that the case was removed to the Western District of Kentucky on June 20, 2008, and Biomet moved to transfer the case to the Northern District of Indiana on June 23. On July 31, Mr. Fields moved for a hearing on the transfer motion, and that motion became ripe on August 15. No orders have been issued regarding either motion.

contract exists, Biomet argues that by accepting the benefit of the instruments, Mr. Fields implicitly agreed to pay for them. When Mr. Fields terminated his distributorship with Biomet, he allegedly owed $1,047,852.86 for instrument purchases. Biomet made a demand for payment on August 10, 2007, but Mr. Fields refused to pay. Biomet maintains that Mr. Fields breached the parties' agreement.

In support of its motion, Biomet submits the declaration of Vice President of Finance Robert Vitoux, who states that Mr. Fields ordered "countless instruments" throughout his tenure as a Biomet distributor. Mr. Vitoux says he acquired this information through interviews of employees and a search of various corporate records. Biomet also submits its demand letter based on an audit of the Fields account but doesn't provide the underlying records.

Mr. Fields presents three arguments in opposition to summary judgment. First, Mr. Fields claims there is a genuine issue of fact regarding whether he is a party to the alleged oral contract. Mr. Fields agrees that he personally signed a written distributorship agreement in 1994 and signed distribution agreements on F&S's behalf with Arthotek and Cell Factor, but none of these contracts expressly mention the sale of instruments. Although Biomet argues that Mr. Fields contracted to purchase instruments in his individual capacity, Mr. Fields points out that the sample accounts belonged to FMC and F&S, and commission payments were made to those corporations, not to Mr. Fields.

Second, Mr. Fields argues that a genuine issue of material fact exists as to the amount owed. In the second amended complaint, Biomet pleaded that Mr. Fields owed $1,397,396.88. In its demand letter, Biomet stated that Mr. Fields owed a total of $1,488,858.13, and in the summary judgment brief, Biomet alleges that Mr. Fields owes $1,047,852.86. Mr. Fields challenges this final computation, arguing that Mr. Vitoux provides no substantiation for his conclusions. Moreover, Mr. Fields argues that Biomet's damages computation is flawed because it doesn't give credit for instruments Biomet already seized.

Third, Mr. Fields says Biomet lacks standing to recover for instruments sold by subsidiaries who are no longer parties in the case. Mr. Fields claims that the demand letter seeks to recover for instruments sold by Cell Factor and Arthrotek, who were removed as parties. In addition, the second amended complaint seeks to recover for instruments sold to F&S, which only had distribution agreements with Arthrotek and Cell Factor.

Biomet replies that it was Mr. Fields who individually contracted to purchase instruments and that his statements to the contrary are merely part of a shell game. Biomet bases this argument on Mr. Fields having entered into the 1994 written distributorship agreement, as well as a 2007 amendment, which identified him personally as the distributor. Biomet also attaches an invoice listing Mr. Fields as the recipient of purchased instruments. Biomet argues that there is no material dispute regarding the amount owed. The amount listed in the second amended complaint was based on a good faith estimate, and Biomet changed this amount

when it took into account credits owed to Mr. Fields and subtracted amounts owed to subsidiaries who are no longer parties to the case. Finally, Biomet says Count VI seeks only the amounts owed to Biomet, Inc. and Biomet Orthopedics, not to Arthrotek or Cell Factor.

In his sur-reply, Mr. Fields argues that the invoice Biomet submitted with its reply merely shows his name in the "SHIP TO" field, but doesn't conclusively establish that he was a party to the alleged oral contract. Mr. Fields also takes issue with Biomet's reliance on the parties' written distributorship agreement, noting that Biomet hasn't sued for breach of that agreement, but rather, Biomet seeks redress for breach of a separate oral contract.

## B.

Mr. Fields moved to strike Mr. Vitoux's declaration. First, Mr. Fields says that the declaration violates the best evidence rule because it makes assertions regarding "various corporate records," but Mr. Vitoux doesn't identify those records or attach copies as required by FED. R. EVID. 1002 and FED. R. CIV. P. 56(e). Mr. Fields next claims that the declaration should be stricken because it is based on interviews of unidentified employees and so contains inadmissible hearsay. Finally, Mr. Fields argues that the declaration isn't based on personal knowledge as required by FED. R. CIV. P. 56(e). Rather, the declaration is based on employee interviews and a search of corporate records which Mr. Vitoux did not conduct.

Biomet responds that as Vice President of Finance, Mr. Vitoux has knowledge about invoicing, and he personally conducted an investigation to verify

the statements in his declaration. Biomet argues that it's proper under FED. R. EVID. 1006 to summarize Mr. Fields' instrument purchases because the record of invoices would be too voluminous to submit. Biomet says that it's not trying to prove the invoices' content, so it need not produce the original documents. Rather, Biomet contends that Mr. Vitoux is testifying to the results of his investigation, and the amount owed by Mr. Fields exists independent of the invoices. Similarly, Biomet claims that the hearsay rule doesn't apply because the declaration simply recounted the steps Mr. Vitoux took in his investigation and doesn't rely on the truth of the out-of-court statements made in the interviews.

In his reply, Mr. Fields again challenges the declaration based on Biomet's failure to attach the "various corporate records" or database entries to which Mr. Vitoux refers. Mr. Fields also argues that Mr. Vitoux doesn't have personal knowledge of the corporate records because he didn't indicate that he reviewed the records himself, and so relied on the truth of the out-of-court statements of others as well as the contents of the records in violation of the best evidence and hearsay rules. Mr. Fields says Biomet's argument that the records are being offered as "summaries" of voluminous writings admits that Mr. Vitoux relies on their contents.

## C.

Analysis of the summary judgment motion begins with the motion to strike Mr. Vitoux's declaration. What Mr. Vitoux learned about the business during his investigation amounts to personal knowledge rather than hearsay, at least to the

extent the information comes from others within the business rather than the invoices. <u>Ty, Inc. v. Softbelly's, Inc.</u>, 353 F.3d 528, 534 (7th Cir. 2003); <u>Agfa-Gevaert, A.G. v. A.B. Dick Co.</u>, 879 F.2d 1518, 1523 (7th Cir. 1989). The information from the invoices, however, is inadmissible on this record.

Rule 1002 doesn't apply where the testimony at issue is based on first-hand knowledge of an event, as opposed to knowledge of the contents of documents, but Mr. Vitoux's conclusions regarding the total amounts owed necessarily depend upon figures listed in the "various corporate records" reviewed. *See e.g.,* <u>Waterloo Furniture Components, Ltd. v. Haworth, Inc.</u>, 467 F.3d 641, 648-649 (7th Cir. 2006) (holding that the best evidence rule didn't apply where the testimony at issue related to the witness's knowledge of the negotiation of an agreement rather than the contents of that agreement). Mr. Vitoux isn't testifying to an event that may be proved by non-documentary evidence, but rather, his knowledge of the total amount owed is derived from corporate records.

Federal Rule of Evidence 1006 allows summary evidence to present the content of voluminous records to prove their contents. There is no reason Mr. Vitoux's declaration cannot qualify as a summary if the requirements of Rule 1006 are met. One of those requirements is that the proponent of the evidence make the underlying documents available for the other party's examination. FED. R. EVID. 1006. Biomet claims it has done so, or rather, will do so if Mr. Fields procures a court order. Biomet reasons that because Mr. Fields responded to its summary judgment motion rather than moving pursuant to FED. R. CIV. P. 56(f) for time for

additional discovery (such as a request for production of the invoices), Mr. Fields surrendered any opportunity to file a request for production without the court's intervention.

Mr. Vitoux's decision not to file a Rule 56(f) affidavit means he can't complain if the court decides the summary judgment motion while he is engaged in discovery. *See e.g.*, King v. Cooke, 26 F.3d 720, 726 (7th Cir. 1994); *see also* Waterloo Furniture Components, Ltd. v. Haworth, 467 F.3d at 648 (holding that the mere fact that the court granted summary judgment prior to allowing any discovery was irrelevant); Am. Nurses' Ass'n v. Illinois, 783 F.2d 716, 729 (7th Cir. 1986) ("[T]he fact that discovery is not complete- indeed has not begun- need not defeat [a motion for summary judgment]."). But Biomet has cited nothing to support the further proposition that Mr. Vitoux waived not just the right to object to the timing of summary judgment but also the right to pertinent discovery itself.

Rule 1006 provides that for a party to use a summary rather than the underlying originals, the "originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place." Biomet has not made the underlying documents available to Mr. Fields, so Rule 1006 is not available to Biomet.

Accordingly, the court strikes the Vitoux declaration to the extent it is based on the invoices, but denies the motion to strike the balance of the declaration.

D.

Biomet seeks partial summary judgment on its breach of contract claim against Mr. Fields in Count VI of the second amended complaint. To prove breach of contract under Indiana law, Biomet must prove: 1) the existence of an enforceable contract; 2) breach of the contract by Mr. Fields; and 3) resulting injury to Biomet. *See* Collins v. McKinney, 871 N.E.2d 363, 368 (Ind. Ct. App. 2007). Analysis begins with whether the parties had an enforceable agreement about instrument payments, and if so, who were the parties to that agreement.

Biomet argues that it contracted orally with Mr. Fields in his personal capacity for the sale of instruments. Under Indiana law, one may agree to a contract implicitly through conduct, the situation, or the material relations between the parties. Grose v. Bow Lanes, Inc., 661 N.E.2d 1220, 1225 (Ind. Ct. App. 1996). One seeking to recover on an implied contract theory generally must show that a benefit was rendered to the other party at that party's express or implicit request. Id. Biomet argues that Mr. Fields implicitly agreed to pay for the instruments by accepting their delivery and allowing Biomet to deduct payments from his bi-monthly commission statements. Mr. Fields doesn't contest the existence of an implied contract or the breach of that contract, but instead responds that there is a genuine issue of fact as to whether he is a party to the contract. Mr. Fields says the sample accounts upon which the purchase of instruments were made belonged to FMC and F&S, and the instruments were paid for through deductions from the commissions paid to those companies.

Biomet responded with a motion for leave to file a third amended complaint, adding a breach of contract claim against FMC and F&S in the alternative to Count VI. Mr. Fields agrees that leave to amend should be freely given and doesn't object to the addition of Count VII. Based on his argument in opposition to summary judgment, Mr. Fields essentially admits the existence of an implied contract between Biomet and FMC/F&S. FMC and F&S might be liable for breach of that contract, but Biomet moved for summary judgment on Count VI alone, not on Count VII. Accordingly, the summary judgment motion inquires whether there is a genuine issue of material fact as to whether Mr. Fields was personally a party to the alleged oral contract.

Whether Mr. Fields is bound to the alleged oral contract depends on whether there was intent to contract, mutual assent to the essential terms, and valid consideration. *See* Cook v. Biotech Inc. v. ACell, Inc., 2005 WL 1473892, at *5 (N.D. Ind. Jun. 21, 2005) (*citing* Dyer Constr. Co. v. Ellas Constr. Co., 287 N.E.2d 262, 264 (Ind. Ct. App. 1972)); *see also* Williston on Contracts, § 3:2 (2008). Each of these elements is present. Mr. Fields signed the 1994 letter agreement and its 2007 amendment in his personal capacity. In doing so, Mr. Fields agreed to abide by Biomet's distributor policies and procedures, including the sale of instruments. Mr. Fields manifested his intent to contract and acceptance of the material terms of the agreement by accepting the shipment of instruments to his companies in exchange for payments deducted from their commissions. Still, Mr. Fields restructured his corporate operations so that commission payments were made

solely to FMC and F&S. To grant summary judgment, the court would have to conclude that no reasonable trier of fact could decide anything other than that Mr. Fields remained individually liable under the oral contract. The court cannot so conclude based on this record.

The court denies Biomet's motion for summary judgment on Count VI.

## E.

After receiving Mr. Fields' response to its motion for summary judgment, Biomet moved for leave to file a third amended complaint. Before Mr. Fields responded, Biomet filed an amended motion, attaching a different proposed complaint with three new counts and adding FMC and F&S back into the litigation. Biomet argues that leave to amend should be granted to prevent the necessity of multiple lawsuits and will result in increased efficiency.

Proposed Count VII alleges a breach of contract claim against FMC and F&S in the alternative to Count VI in the event that the evidence shows that Mr. Fields' companies, as opposed to Fields himself, contracted to purchase the instruments from Biomet. Biomet continues to assert that Mr. Fields personally contracted to purchase instruments and says this new claim raises no arbitrable issues.

Proposed Count VIII alleges a fraudulent transfer claim against FMC and F&S based on allegations that Mr. Fields is trying to shift liability for the instruments from himself to his companies and that Mr. Fields transferred, or will transfer, all of the assets of FMC and F&S back to himself so the companies will have no assets with which to satisfy any judgment entered in this case.

Proposed Count IX alleges a claim for breach of contract by Arthotek against F&S based on a written contract entered into in 2005. Biomet claims that F&S agreed to pay Arthrotek for instruments, but failed to do so before the distributorship's termination. Biomet admits that the contract between Arthortek and F&S contains an arbitration provision but argues that F&S waived its right to demand arbitration by filing a complaint in Kentucky state court asserting arbitrable claims.

Mr. Fields doesn't oppose Biomet's motion to add proposed Count VII, noting the liberal standard for granting motions to amend. As to Count VIII, Mr. Fields argues that the Commerce Clause forbids the application of the Indiana Uniform Fraudulent Transfer Act, IND. CODE § 32-18-2, to financial transactions that allegedly took place entirely outside of Indiana. Mr. Fields says FMC and F&S are both Kentucky corporations with their principal place of business in Kentucky, and Mr. Fields is a Kentucky resident and citizen. Mr. Fields claims that Count VIII would be subject to immediate dismissal because Biomet hasn't alleged facts to support an inference that the alleged fraudulent transactions occurred in Indiana, and the court should deny Biomet's motion to amend as futile.

Biomet argues that it properly stated a factual basis for a fraudulent transfer claim under either the Kentucky or Indiana statute. Accordingly, the relevant question is which law applies, rather than whether there are federalism concerns. Biomet says it's not seeking to regulate financial activity outside of Indiana; rather, its claim is in the nature of a judgment creditor's bill and operates in rem. Because

Biomet is an Indiana corporation with its principal place of business in Indiana, any injury suffered from the alleged fraudulent transfer occurred in Indiana. Biomet urges the court to grant leave to amend to add Count VIII and later apply a choice-of-law analysis to determine which law controls.

Mr. Fields also opposes the addition of Count IX because the mandatory arbitration provision in the Arthrotek-F&S contract covers that claim. Mr. Fields says he hasn't waived the right to arbitrate by filing the separate Kentucky action. He says that Biomet takes the position that the arbitration provision must be enforced against F&S in the Kentucky action, while at the same time arguing here that F&S's claim in the Kentucky court destroys the arbitration provision by waiver. Mr. Fields claims that the provision cannot be used as both a shield and sword in two different actions. Second, Mr. Fields argues that F&S hasn't filed an arbitrable claim in Kentucky: F&S's claim seeks a declaratory judgment concerning amounts allegedly owed based upon Biomet's allegations for breach of the oral contract, not the written agreement between F&S and Arthrotek. Mr. Fields also argues that even if F&S's claim in the Kentucky action constituted a waiver of arbitration, that waiver is limited to the Kentucky claim and shouldn't apply to this action.

Biomet replies that it's not trying to enforce the arbitration provision in the Kentucky litigation. Instead, Biomet hasn't filed a responsive pleading in that action and informed the court that it was reserving its right to move to dismiss based on arbitrability only with regard to two of the Biomet defendants, not

including Arthrotek. As such, Biomet claims that it hasn't taken a contradictory position in the Kentucky case. Next, Biomet says that Mr. Fields' argument that the Kentucky declaratory judgment claim doesn't involve amounts owed under the written contract between F&S and Arthrotek fails based on a reading of the Kentucky complaint. Biomet notes that Count VII of the Kentucky complaint isn't limited to amounts owed pursuant to an oral contract but, rather, seeks a declaration that Biomet doesn't owe the amounts demanded by "the Biomet defendants," which include Arthrotek. As such, Biomet maintains that the Kentucky complaint implicates the arbitration provision in the written contract between Arthrotek and F&S.

The court grants Biomet's unopposed motion to add Count VII. The addition of Counts VIII and IX is not unopposed. A party may amend its pleadings at any time with the court's leave, which should be freely given "when justice so requires." FED.R.CIV.P. 15(a); Forman v. Davis, 371 U.S. 178, 182 (1962) (holding that leave should be freely given so long as there is no evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment"). "The opportunity to amend a complaint is futile if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997); see also Sound of Music Co. v. Minnesota Mining & Mfg. Co., 477 F.3d 910, 923 (7th Cir. 2007) (noting that

an amendment is futile if the amended complaint would not survive a motion for summary judgment).

Proposed Count VIII states a claim for fraudulent transfer under Indiana law against FMC and F&S based on Mr. Fields' alleged attempt to shift liability for the instruments from himself onto his companies and then transfer the companies' assets back to himself to avoid satisfying judgment. The court agrees with the defendants that the Commerce Clause forbids a state from imposing regulations on commerce occurring wholly outside of that state's borders, *see* State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 421-422 (2003), but the issue at the amendment stage is whether Biomet sufficiently stated facts upon which the court might grant relief. Whether Biomet cited the correct state's law doesn't matter if the factual allegations suffice to state a claim for fraudulent transfer. *See* Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 226 (S.D.N.Y. 2004) ("[T]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.") (*citing* Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 45-46 (2d Cir. 1997)).

In determining the sufficiency of Biomet's factual allegations, the court applies the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a fraud plaintiff to plead in detail the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Richter v. Corp. Fin. Assocs., LLC, 2007 WL 1164649, at *1 (S.D. Ind. Apr. 19,

2007) (*citing* <u>Hefferman v. Bass</u>, 467 F.3d 596, 601 (7th Cir. 2006)). "Rule 9(b)'s particularity requirement is not satisfied by allegations of fraud based on 'information and belief,' unless the facts are peculiarly within the adversary's knowledge." <u>Richter v. Corp. Fin. Assocs., LLC</u>, 2007 WL 1164649 at *2. In such a case, the plaintiff must submit a statement of facts upon which the belief is founded. <u>Id.</u> Biomet alleges the factual basis of its fraudulent transfer claim upon information and belief but doesn't provide a statement of facts upon which its belief of fraudulent transfer is founded. Biomet adequately pleads jurisdiction and the dates and conditions under which it believes Fields owes Biomet, but it makes no allegations regarding the events surrounding the alleged fraudulent transfers and offers no foundation for its beliefs. As such, Biomet's allegations are insufficient under Rule 9(b). *See* <u>id.</u> at *2-3 (holding that the pleading requirements are not relaxed under the Indiana Fraudulent Transfer Act and allegations upon information and belief are insufficient to state a claim under the particularized requirements); *see also* <u>Gen. Elec. Capital Corp. v. Lease Resolution Corp.</u>, 128 F.3d at 1079 (considering whether the plaintiff pled the circumstances surrounding an alleged fraudulent transfer under Illinois state law with sufficient particularity to satisfy Rule 9(b)). The addition of proposed Count VIII would be futile, so the court denies Biomet's motion to add Count VIII.

Turning to proposed Count IX, a party may waive its contractual right to arbitrate expressly or implicitly by choosing a judicial forum for the resolution of a dispute. <u>Ernst & Young LLP v. Baker O'Neal Holdings, Inc.</u>, 304 F.3d 753, 756

(7th Cir. 2002). A court deciding whether a waiver has occurred must examine the totality of the circumstances regarding whether the party against whom the waiver is to be enforced acted inconsistently with the right to arbitrate. Id. (*citing* Grumhaus v. Comerica Sec., Inc., 223 F.3d 648, 650-651 (7th Cir. 2000); *see also* Halim v. Great Gatsby's Auction Gallery, Inc., 516 F.3d 557, 562 (7th Cir. 2008). Mr. Fields argues that he didn't intend to waive F&S's right to arbitrate by filing suit in Kentucky, and this argument is consistent with his moving to compel arbitration of all claims arising from the Arthrotek contract. This case differs from those in which waiver was found due to the waiving party's decision to participate in litigation and delay in enforcing its right to arbitrate. *See* Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995); St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc., 969 F.2d 585, 590 (7th Cir. 1992).

Still, the Kentucky complaint seeks a declaratory judgment regarding the amounts owed by all of the Biomet defendants, including Arthrotek. Unlike the cases holding that a decision to litigate breach of contract claims didn't evince an intent to waive arbitration of other claims, Gingiss Int'l, Inc. v. Bormet, 58 F.3d 328, 332 (7th Cir. 1995), the various claims at issue here aren't distinct. This case is more akin to Grumhaus v. Comerica Securities, Inc., in which the court rejected the plaintiffs' argument that they didn't intend to waive their right to arbitrate by filing a state court action. 223 F.3d at 652-653; Welborn Clinic v. MedQuist, Inc., 301 F.3d 634, 637 (7th Cir. 2000) (finding waiver to arbitrate issues plaintiffs had

already litigated and lost in state court); *compare* <u>OCMC, Inc. v. Billing Concepts, Inc.</u>, 2006 WL 1234884, at *3 (S.D. Ind. May 3, 2006) (holding that the defendant's initiation of a separate lawsuit wasn't inconsistent with the right to arbitrate the claims asserted in the instant suit because those claims didn't involve the same legal and factual issues). The <u>Grumhaus</u> court held that the plaintiffs waived their right to arbitrate, finding that the state court claims and claims submitted for arbitration both arose from the same dispute, and the rights and remedies underlying both claims were the same. 223 F.3d at 652-653. Similarly, the Kentucky declaratory judgment count involves identical legal and factual issues as in Count VI and proposed Count IX, namely the amounts owed to Biomet under the parties' various agreements. This appears to be precisely the type of forum shopping that the waiver doctrine aims to prevent. <u>OCMC, Inc. v. Billing Concepts, Inc.</u>, 2006 WL 1234884 at *4.

Accordingly, the court finds that Mr. Fields intended to waive his right to arbitrate by filing the Kentucky action and grants Biomet's motion to amend as to proposed Count IX.

## F.

After filing its motion for leave to amend, Biomet filed a motion requesting that the court order Mr. Fields to show cause why he and his companies shouldn't be held in contempt of the court's November 28, 2007 arbitration order. Biomet argues that Mr. Fields, FMC, and F&S violated the order when they filed the Kentucky state court action and alleged claims subject to mandatory arbitration

22

under the Cell Factor and Arthrotek contracts. Biomet asks that the court sanction Mr. Fields, FMC, and F&S by ordering them to pay Biomet's attorneys' fees from the date Mr. Fields filed his motion to compel through the date this motion is granted.

Mr. Fields responds that he didn't violate the court's arbitration order because the order didn't require Fields, FMC, or F&S to take or refrain from taking any action. The order required Biomet to submit six specified claims to arbitration. The order referred only to claims in Biomet's first amended complaint, not to the later added instrument claims. Even if the order is read to apply to Mr. Fields, FMC, and F&S, Mr. Fields says they didn't violate it by filing the Kentucky declaratory judgment count because that count relates only to instrument payments which were not subject to the arbitration order.

Mr. Fields next argues that even if the arbitration order applied to him, the declaratory judgment claim asserted in the Kentucky action isn't arbitrable. Mr. Fields says that the declaratory judgment claim was intended to meet the substance of the oral contract claim asserted against Mr. Fields in this action and that claim doesn't involve an arbitration provision.

Biomet replies that Mr. Fields misrepresented the instrument claim in the Kentucky complaint. Biomet says that the Kentucky claim is directed at all Biomet defendants, including Arthrotek, thus implicating the mandatory arbitration provision in the contract between F&S and Arthrotek. Biomet says the Kentucky count wasn't drafted to include only the amounts owed under the alleged oral

contract, and so necessarily includes all monies owed by F&S and FMC to the other Biomet defendants. Biomet accuses Mr. Fields of improper forum shopping by filing the Kentucky complaint before Biomet could amend its complaint to add F&S and FMC back into the litigation for purposes of partial summary judgment. Finally, Biomet says that the court issued an unequivocal command to arbitrate all disputes relating to the F&S and FMC contracts.

In a separate motion, Biomet asks that the court sanction Mr. Fields and his attorneys pursuant to Federal Rule of Civil Procedure 11 for submitting the Kentucky complaint to harass Biomet and cause unnecessary delay. That motion also asserts that Mr. Fields should be liable for excessive costs pursuant to 28 U.S.C. § 1927, which provides that an attorney who unreasonably and vexatiously multiplies the proceedings in any case may be required to satisfied the expenses incurred as a result of such conduct.

In support of this motion, Biomet recaps several of its previous arguments, including its assertion that F&S and FMC improperly brought claims in the Kentucky litigation that are subject to mandatory arbitration. Biomet also says Mr. Fields admitted that filing the Kentucky action was improper forum shopping by arguing that the declaratory judgment count involves only the instruments claims at issue in this case. Mr. Fields knew his response to the instrument claim would cause Biomet to restore F&S and FMC to the litigation, so Mr. Fields rushed to get a claim on file in Kentucky in an attempt to deprive Biomet of its choice of an Indiana forum.

Biomet also argues that the Kentucky claims arise out of the same transaction or occurrence as the claims in this case, and so should have been brought as compulsory counterclaims in this case under Federal Rule of Civil Procedure 13(a). Biomet alleges that the Kentucky claims stem from the asset sale to Zimmer, so the same contracts and interactions will be central to both cases. Further, Mr. Fields asserts an unclean hands affirmative defense in this case involving Biomet's alleged attempt to retain Mr. Fields' sales representatives after the Zimmer sale, which is precisely the same claim Mr. Fields brings in the Kentucky suit.

As a threshold issue, Mr. Fields first argues that he and his attorneys shouldn't be sanctioned for filing the Kentucky suit because federal courts can't impose sanctions for conduct that occurs in another court. Mr. Fields relies on case law from other circuits which holds that sanctions may only reach conduct that occurred in the district court in which the sanctions motion is filed. Mr. Fields also cites <u>Peffley v. Durakool, Inc.</u>, in which this court refused to apply Rule 11 sanctions to a complaint filed in state court and later removed to this court. 669 F. Supp. 1453, 1462 (N.D. Ind. 1987) (Miller, J.).

Next, Mr. Fields contends that the Kentucky claims aren't compulsory counterclaims because they aren't related to the same transaction or occurrence as this case. Mr. Fields explains that there are three relevant pieces of litigation to consider. First, Mr. Fields, FMC, and F&S sued Mr. Stallings in Kentucky state court in July 2007 alleging a breach of the parties' employment agreement, breach

of fiduciary duties, interference with customer relationships, violations of the Kentucky Uniform Trade Secrets Act, and conspiring with Biomet to harm FMC and F&S. Then, Biomet filed this action against Mr. Fields alleging violations of the non-compete provisions of the parties' agreements, interference with customer relationships, violations of the Indiana Trade Secrets Act, misappropriating confidential information, breach of fiduciary duties, and breach of an alleged oral contract to pay for surgical instruments. Finally, Mr. Fields filed the third suit against Biomet in Kentucky state court alleging claims against Biomet for its involvement in the conspiracy with Mr. Stallings, as well as a request for declaratory judgment regarding the amounts owed for instrument purchases.[3] Mr. Fields argues that while all three cases are technically related, the two Kentucky cases will apply Kentucky law to test Mr. Stallings' and Biomet's conduct against the FMC and F&S contracts, while this court will apply Indiana law to test Mr. Fields' conduct against his obligations owed to Biomet under the distributorship agreements. The later filed Kentucky claims aren't compulsory counterclaims, as Mr. Fields sees it, because the rights and obligations in each case are distinct and will be determined under different contracts, different operative facts, and different bodies of law. Even if the claims should have been compulsory counterclaims, Mr.

---

[3] Mr. Fields notes that he filed the second Kentucky action as a "related" case to the first Kentucky case and moved to consolidate, but Biomet removed the second action to federal court before the two cases could be consolidated.

Fields says he shouldn't be sanctioned because Biomet offers no subjective or objective proof that he had an improper motive for filing the Kentucky lawsuit.

As to Biomet's second theory for sanctions, Mr. Fields argues that the Kentucky complaint doesn't raise any claims subject to the court's arbitration order. FMC, not Mr. Fields, brought the declaratory judgment claim in Kentucky court, so the court would have to sanction a party for a claim that a non-party brought in another court. Second, Mr. Fields revisits the argument from his response in opposition to Biomet's motion for contempt: namely that the declaratory judgment claim doesn't raise arbitrable issues because it arises only under the oral contract alleged in this case, which doesn't contain an arbitration clause. In addition, Mr. Fields says that the rest of the Kentucky claims aren't arbitrable because they arise under FMC's and F&S's contracts with its sales representatives, not the distribution agreements with Biomet.

Biomet replies that the Supreme Court has held that district courts have the inherent power to impose sanctions for bad faith litigation tactics, even when those abuses occur outside that court. *See* <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 58 (1991). Moreover, Biomet argues that Rule 11 applies despite the Kentucky case's removal from state court because the motion is directed at Mr. Fields' conduct occurring before this court and before the Kentucky federal court after removal.

Biomet reiterates its argument that the Kentucky claims should have been filed as compulsory counterclaims, contending that the bases for Biomet's breach of contract claims in this litigation involve precisely the same legal and factual

issues at play in the Kentucky litigation. Biomet says this litigation necessarily will involve interpreting the parties' obligations under the distributorship agreements, as well as FMC's and F&S's employment contracts with their sales reps, and the sales reps' contracts with Zimmer. The Kentucky litigation will involve Biomet's rights under its distributorship agreement with Mr. Fields. Biomet also reiterates its previous arguments regarding the arbitrability of the Kentucky claims.

Finally, Biomet says the Kentucky litigation isn't merely an extension of the earlier suit against Mr. Stallings. Biomet contends that Mr. Fields doesn't explain why he didn't try to add Biomet to the first Kentucky case before the Indiana litigation was filed. Biomet says the Cell Factor and Arthrotek contracts include forum selection clauses that favor Indiana, so Mr. Fields shouldn't have made the Biomet entities parties to the second Kentucky state case.

On November 28, 2007, the court granted Mr. Fields' motion to compel arbitration of "Biomet's claims related to F&S and FMC under the Cell Factor and Arthrotek contracts." Mr. Fields, FMC, and F&S filed their complaint in Kentucky state court in June 2008. The Kentucky complaint includes a claim for declaratory judgment regarding the amounts owed to "the Biomet defendants" for instrument purchases. The complaint defines the Biomet defendants as including Arthrotek and Cell Factor, and the Cell Factor and Arthrotek contracts both provide terms on instruments sales and include mandatory arbitration provisions. The Kentucky

declaratory judgment claims, then, arise in part out of the Cell Factor and Arthrotek contracts and arguably are subject to mandatory arbitration.[4]

Notwithstanding that the Kentucky claims may be arbitrable, to hold Mr. Fields in civil contempt, Biomet must show by clear and convincing evidence that Mr. Fields "violated an order that sets forth in specific detail an unequivocal command from the court." Tranzact Techs., Inc. v. 1Source Worldsite, 406 F.3d 851, 855 (7th Cir. 2005) (*citing* United States v. Dowell, 257 F.3d 694, 699 (7th Cir. 2001)); *see also* Stotler & Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989) (holding that the party charging civil contempt faces a higher-than-usual burden to show by clear and convincing evidence that an order of the court was violated). Biomet must show that Mr. Fields violated an explicit order of this court by filing the Kentucky declaratory judgment claim. *See* Grove Fresh Distribs., Inc. v. John Labatt, LTD., 299 F.3d 635, 642 (7th Cir. 2002).

The November 2007 opinion is insufficiently focused on the issue at hand to support a contempt finding. That order compelled arbitration of Biomet's claims related to F&S and FMC under the Cell Factor and Arthrotek contracts, but no

---

[4] Mr. Fields claims he didn't intend the Kentucky declaratory judgment count to raise arbitrable issues and, instead, contends that the count was structured to mirror Biomet's Count VI, which focuses on the alleged oral contract rather than the Cell Factor and Arthrotek written agreements. Despite Mr. Fields' argument that the only "actual controversy" relates to the alleged oral contract, the Kentucky complaint isn't explicitly limited to an oral agreement, and Biomet created a justiciable controversy over amounts F&S owes to Arthrotek by sending Mr. Fields a demand letter in August 2007. *See* Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 712 (7th Cir. 2002) (explaining that the actual controversy requirement is applicable to declaratory judgment actions). Narrowing the Kentucky complaint would be the role of the Kentucky court.

Biomet instrument claim existed at the time of the order. There was no unequivocal command to compel every claim relating to the Cell Factor and Arthrotek agreements to arbitration. *See e.g.,* <u>Chem. Leaman Tank Lines, Inc. v. Cent. Conf. of Teamsters</u>, 1994 WL 457176, at *2 (N.D. Ill. Aug. 22, 1994).

Mr. Fields raises a threshold issue regarding whether the court may impose Rule 11 sanctions and costs under 28 U.S.C. § 1927 for conduct which occurred in another forum. Mr. Fields cites a case from the Eastern District of Pennsylvania that held that sanctions may only reach conduct that occurred in the district court in which the motion for sanctions was filed. *See* <u>U.S. Horticultural Supply, Inc. v. Scotts Co.</u>, 2006 WL 1320158, at *4 (E.D. Pa. Jun. 1, 2006). Mr. Fields analogizes to that court's holding, arguing that he shouldn't be sanctioned for filing suit in Kentucky, even if that conduct represents a pattern of vexatious litigation tactics. Mr. Fields' argument appears to conflict with <u>Chambers v. NASCO, Inc.</u>, in which the Supreme Court affirmed the propriety of sanctioning conduct occurring outside the tribunal. 501 U.S. at 57-58. Moreover, the <u>Peffley</u> case that Mr. Fields cites is distinguishable because it involved sanctions directed only at a state court complaint that had later been removed to federal court. 669 F. Supp. at 1462.

Biomet must produce evidence of Mr. Fields' improper conduct warranting sanctions under Rule 11 and costs pursuant to 28 U.S.C. § 1927. Rule 11 authorizes a district court to impose sanctions for submissions that are filed for an improper purpose or without a reasonable investigation of the facts and law necessary to support their claims. *See* <u>Senese v. Chicago Area I.B. of T. Pension</u>

Fund, 237 F.3d 819, 823 (7th Cir. 2001). Section 1927 provides that an attorney may be liable for excessive costs where the attorney acted vexatiously, unreasonably, and in subjective or objective bad faith. *See* Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of Fox Masonry and Expert Restorations, 140 F.3d 661, 666 (7th Cir. 1998).

Biomet contends that Mr. Fields acted with an improper purpose and in bad faith by filing claims in Kentucky that should have been raised as compulsory counterclaims in this litigation. Federal Rule of Civil Procedure 13(a) defines a compulsory counterclaim as any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." In determining whether claims arise of the same "transaction or occurrence," the court of appeals applies a "logical relationship" inquiry. *See* United Consumers Club, Inc. v. Prime Time Marketing Mgt, Inc., 2008 WL 150623, at *2 (N.D. Ind. Jan. 11, 2008) (*citing* Burlington Northern RR Co. v. Strong, 907 F.2d 707, 711-712 (7th Cir. 1990)). "In assessing this logical relationship, the court avoids a wooden application of the common transaction label and instead engages in a careful examination of the factual allegations underlying each claim." United Consumers Club v. Prime Time Marketing Mgt, 2008 WL 150623 at *2. While the failure to assert a compulsory counterclaim generally bars the claim in future litigation, courts faced with parallel proceedings have resorted to issuing stays, transfers, or dismissals with prejudice, often giving preference to the court in which the related claim first was filed. Id; Burlington Northern R.R. Co. v. Strong, 907 F.2d at 711 (holding that the court

must consider if the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds suggest that the claims are logically related).

The Indiana case and the second filed Kentucky action both arise in the factual setting of Mr. Fields' asset sale to Zimmer, but the cases focus on separate obligations arising out of that setting. In the Indiana action, Biomet seeks to enforce certain non-compete obligations Mr. Fields owes Biomet in connection with their distributorship agreements. This case will focus on the effect of Mr. Fields' conduct and efforts in connection with Zimmer under Indiana law. In the Kentucky action, Mr. Fields seeks damages relating to Biomet's conduct in regards to FMC's and F&S's employment contracts with its sales representatives. That case will focus on Biomet's alleged conspiracy with Mr. Stallings to induce Mr. Fields' employees to breach their sales contracts under Kentucky law.

Both cases involve the same course of dealing, but the cases involve different operative contracts and bodies of law. Accordingly, Mr. Fields' claims in the Kentucky action more likely are permissive, rather than compulsory, counterclaims. *See* K&K Iron Works, Inc. v. Am. Railing Sys., Inc., 2008 WL 597607, *3-4 (N.D. Ill. Feb. 28, 2008) (concluding that claims weren't compulsory counterclaims despite being technically related where they were based on independent contracts involving different legal theories and factual issues); *see also* Gildorn Savings Ass'n v. Commerce Savings Ass'n, 804 F.2d 390, 396 (7th Cir. 1986). The only claim from the Kentucky action that directly overlaps with this

litigation is the declaratory judgment request regarding instrument payments. That claim appears at this point to arise from the same transaction and occurrence as in this case, so the court eventually may find that Mr. Fields should have asserted it as a compulsory counterclaim.

Ultimately, though, motions for sanctions constitute a clumsy, ill-suited tool for deciding whether a claim amounts to a compulsory counterclaim or a permissive one, or whether a claim pending outside this case is arbitrable. Sanctions motions change the focus of such issues, clouding the fundamental first issues as the court and the parties address intent and effect, rather than the more immediate legal issues. Further, treating the issues through sanctions motions may either change the identity of the decision-maker (if this court and the Kentucky court disagree on the legal issues) and arguably subject the parties to conflicting rulings. It makes more sense from a standpoint of judicial economy, when identical or overlapping issues pend in the different courts, to proceed, not through sanctions, but rather through 28 U.S.C. § 1404 (if appropriate) and other orderly, more common methods of dealing with multidistrict litigation.

The court denies the various sanctions motions.

III.

For the foregoing reasons, the court GRANTS IN PART the defendant Fields' motion to strike the Vitoux declaration [Doc. No. 71], DENIES Biomet's motion for summary judgment on Count VI [Doc. No. 63], GRANTS IN PART Biomet's motion to amend by allowing the addition of proposed Counts VII and IX [Doc. No. 83], and DENIES Biomet's motions for a rule to show cause and for sanctions [Doc. Nos. 90 and 98]. The court also DENIES AS MOOT Biomet's June 27 motion to amend [Doc. No. 78], which was superseded by the July 11 motion.

SO ORDERED.

ENTERED:  December 9, 2008

        /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court